United States District Court
Southern District of Texas
**ENTERED**
November 17, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| 99869 CANADA, INC., 3791068 CANADA, INC.; DAVID BURTNIK; GEORGE DeWOLF; DRACO CAPITAL, INC.; ECAL PARTNERS, LTD.; EOSPHOROS ASSET MANAGEMENT, INC.; MARY HANEMAAYER; DARSHAN KHURANA; ROBERT MENDEL (Individually and As Assignee of STANLEY BERAZNIK, EDWARD PASCAL); MATTEO NOVELLI; DIYA AL-SARRAJ; SEQUOIA AGGRESSIVE GROWTH FUND, LTD. (Individually, As Successor to SEQUOIA DIVERSIFIED GROWTH FUND, LTD. and As Assignee of RIG III FUND, LTD.; SEMPER GESTION, SA; ARAN ASSET MANAGEMENT; ACHIM GLAUNER; KARL-HEINZ GLAUNER; and CHRISTIAN GLAUNER); ASHWIN SAIRAM; PETER TAYLOR; and MARLENE TERSIGNI, Plaintiffs, v. GLOBAL SECURITY NETWORKS, INC.; THE NOX TRUST; REINER MARIO LEMME; and METRIC CAPITAL PARTNERS, LLP, Defendants. | CIVIL ACTION NO. H-16-2788 |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs 99869 Canada, Inc.; 3791068 Canada, Inc.; David Burtnik; George DeWolf; Draco Capital, Inc.; ECAL Partners, Ltd.; Eosphoros Asset Management, Inc.; Mary Hanemaayer; Darshan Khurana; Robert Mendel (individually and as assignee of Stanley Beraznik,

Edward Pascal); Matteo Novelli; Diya Al-Sarraj; Sequoia Aggressive Growth Fund, Ltd. (individually, as successor to Sequoia Diversified Growth Fund, Ltd. and as assignee of Rig III Fund, Ltd.; Semper Gestion, SA; Aran Asset Management; Achim Glauner; Karl-Heinz Glauner; and Christian Glauner); Ashwin Sairam; Peter Taylor; and Marlene Tersigni (collectively, "Plaintiffs"), bring this action against Defendants Global Security Networks, Inc. ("GSN"), The Nox Trust (or "the Trust"), Reiner Mario Lemme ("Lemme"), and Metric Capital Partners, LLP, (collectively, "Defendants") asserting claims for fraudulent transfer in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Texas Business and Commerce Code §§ 24.005(a)(1) and 24.005(a)(2).

Pending before the court is defendant The Nox Trust's Motion to Dismiss (Docket Entry No. 4). For the reasons stated below, the motion will be granted for lack of personal jurisdiction, and this action will be dismissed without prejudice as to The Nox Trust.

## I. Factual Allegations and Undisputed Facts

Plaintiffs allege that they provided funds to Robert Kubbernus ("Kubbernus") to acquire the controlling interest in SkyPort Global Communications, Inc., ("SkyPort") which would become TrustComm, Inc. ("TrustComm"). Plaintiffs allege that, despite assurances that they would receive an interest in SkyPort, Kubbernus acquired the company on behalf of Balaton Group, Inc., an entity which he owned exclusively. On July 23, 2015, Plaintiffs secured a $16.8

million judgment against Kubbernus upon findings of fraud and violations of the Texas Securities Act.

Plaintiffs allege that in December of 2011, while Plaintiffs' suit against Kubbernus was pending, Kubbernus entered into an agreement with defendant Lemme for Lemme to acquire TrustComm through a newly created entity, GSN. In 2013 TrustComm became a wholly-owned subsidiary of GSN.

GSN is a Delaware corporation wholly owned by The Nox Trust. The Nox Trust is a Delaware Trust created on January 16, 2012. Plaintiffs allege that The Nox Trust was created for the purpose of facilitating the fraudulent transfer of TrustComm stock and that the Trust knowingly acquired TrustComm through GSN.

## II. Analysis

Citing Federal Rules of Civil Procedure 9(b), 12(b)(2), and 12(b)(6), The Nox Trust moves to dismiss Plaintiffs' claims against it for lack of personal jurisdiction, failure to state a claim for which relief may be granted, and failure to plead fraud with particularity.

### A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff[s] 'bear[] the burden of establishing the district court's jurisdiction over the defendant.'" Quick

Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff[s] may bear [their] burden by presenting a prima facie case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiffs' complaint and must resolve any factual conflicts in favor of the plaintiffs. Guidry v. United States Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e] Court." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

B.   Applicable Law

"A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997), cert. denied, 118 S. Ct. 691 (1998). Moreover, a federal court may only exercise personal jurisdiction over a nonresident defendant if the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Id. The court therefore may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Due process is satisfied if the "nonresident defendant has 'certain minimum contacts with [the forum] such that the maintenance of suit does not offend "traditional notions of fair play and substantial justice."'" Gardemal v. Westin Hotel Co., 186 F.3d 588, 595 (5th Cir. 1999) (quoting International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945)) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)). "The 'minimum contacts' inquiry is

fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" McFadin, 587 F.3d at 759. Once plaintiffs satisfy these two requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985).

C.  Minimum Contacts

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). See also Panda Brandywine, 253 F.3d at 867-68 (recognizing that a district court may assert either general or specific personal jurisdiction over a party). Plaintiffs neither argue nor allege facts that would show that The Nox Trust is subject to this court's general jurisdiction. The court must therefore determine whether it has specific jurisdiction over the Trust.

Specific jurisdiction exists when the defendant lacks substantial, continuous, and systematic contacts with the forum state but instead has some minimum contacts that establish (1) the defendant has "purposefully directed [its] activities at residents

of the forum," and (2) the plaintiffs' alleged injuries "arise out of or relate" to those activities." Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010) (quoting Burger King, 105 S. Ct. at 2182). Specific jurisdiction exists where a "defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 105 S. Ct. at 2183 (quoting Hanson v. Denckla, 78 S. Ct. 1228, 1239-40 (1958)). See also Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005) (recognizing "purposeful availment" as the "touchstone of jurisdictional due process"); Rushmore Investment Advisors, Inc. v. Frey, 231 S.W.3d 524, 527 (5th Cir. 2007) ("To establish minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws."). The specific jurisdiction analysis "'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1124 (2014) (quoting Keeton v. Hustler Magazine, Inc., 104 S. Ct. 1473 (1984)). The Fifth Circuit has stated that

> [f]or specific jurisdiction to be proper, Due Process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiffs' claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable.

In re Chinese-Manufactured Drywall Products Liability Litigation, 753 F.3d 521, 539-40 (5th Cir. 2014) (citing ITL International, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012)). "In

sum, to satisfy Due Process, the defendant's connection with the forum state must be such that it 'should reasonably anticipate being haled into court' in the forum state." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)). Plaintiffs bear the burden of making out a prima facie case with respect to the first two prongs of the specific jurisdiction analysis. Monkton Insurance Services, Ltd. v. Ritter, 768 F.3d 429, 433 (5th Cir. 2014) (quoting Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006).

Plaintiffs argue that The Nox Trust is subject to the court's specific jurisdiction because it is the "recipient of a fraudulent transfer of assets in the State of Texas."[1] Plaintiffs offer two theories in support of their argument. First, they allege that GSN's tortious conduct can be attributed to the Trust on an "alter ego" theory.[2] Second, they argue that the Trust's "participation in the fraudulent transfer . . . may be established by the fact that it was created for the purpose of facilitating the transfer."[3]

Plaintiffs allege that Kubbernus sold TrustComm to Lemme through GSN.[4] Plaintiffs then allege that Lemme organized The Nox

---

[1]Original Petition & Request for Disclosures ("Petition"), Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 5 ¶ 3.

[2]Plaintiffs' Response to Motion to Dismiss and Motions for Leave to Amend and for Jurisdictional Discovery ("Plaintiffs' Response"), Docket Entry No. 10, p. 6 ¶ 21.

[3]Id. at 7 ¶ 22.

[4]Petition, Docket Entry No. 1-1, p. 8 ¶ 16.

Trust "to act as the intermediate owner of [GSN]."[5] Finally, Plaintiffs allege that The Nox Trust, "by knowingly acquiring this asset, purposely directed its business activity at Texas, and thus caused harm to Plaintiffs in violation of [TUFTA]."[6] Plaintiffs essentially seek to either attribute the alleged actions of GSN, as a subsidiary of the Trust, or the alleged purpose of Lemme, as grantor, to the Trust.

The court first considers Plaintiffs' "alter ego" theory. "Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999) (citing Cannon Manufacturing Co. v. Cudahy Packing Co., 45 S. Ct. 250 (1925)). "As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 346 (5th Cir. 2004) (citing Cannon, 45 S. Ct. at 250 (declining to attribute, for jurisdictional purposes, the presence of a subsidiary in the forum state to a nonresident parent corporation where the parent and subsidiary maintained distinct and separate corporate entities)).

---

[5]Id. ¶ 18.

[6]Plaintiffs' Response, Docket Entry No. 10, p. 9 ¶ 26.

Jurisdictional veil-piercing is limited to situations in which a parent corporation "exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983). See also PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 173 (Tex. 2007) (recognizing that jurisdictional veil-piercing requires a plaintiff to show that the parent corporation "exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction'"). The Texas Supreme Court has stated that

> [t]o "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. . . But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 799 (Tex. 2002) (citations omitted). The Texas Supreme Court has observed that the doctrine of jurisdictional veil-piercing is similar to the alter ego concept in substantive liability, but that "jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof." PHC-Minden, 235 S.W.3d at 174. "'[A] subsidiary corporation will not be regarded as the alter ego

of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders.'" Id. at 175 (quoting Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571, 573 (Tex. 1975)). Because under Texas law a corporation is presumed to be a separate entity from its shareholders, the party seeking to ascribe one corporation's actions to another bears the burden of proof. BMC Software, 83 S.W.3d at 798; Dickson Marine, 179 F.3d at 338.

Plaintiffs mistakenly infer from The Nox Trust's ownership of GSN that GSN's allegedly fraudulent conduct can be imputed to the Trust. But Plaintiffs overlook the essential step of piercing the corporate veil. GSN's conduct as a corporation cannot be ascribed to its shareholder, The Nox Trust, unless GSN is merely an alter ego, and the burden is on Plaintiffs to establish that fact.

Accepting as true the uncontested allegations in Plaintiffs' Petition, the court concludes that Plaintiffs have failed to show that veil-piercing is warranted here. Plaintiffs have neither alleged nor made any showing that The Nox Trust and GSN disregarded corporate formalities, that the Trust controlled GSN's internal business operations and affairs, or that the Trust exercised an unusually high degree of control over GSN, i.e., a degree of control greater than that normally associated with common ownership and not consistent with The Nox Trust's investor status. GSN's

-11-

alleged conduct therefore provides no basis for the exercise of specific jurisdiction over the Trust.

The court next considers Plaintiffs' argument that The Nox Trust is subject to this court's jurisdiction based on "its own participation in the fraudulent transfer, which may be established by the fact that it was created for the purpose of facilitating the transfer."[7] Plaintiffs cite to a Fifth Circuit case invoking the "effects" test as a basis for specific personal jurisdiction. See Dontos v. Vendomation NZ Ltd., 582 F. App'x 338, 344-45 (5th Cir. 2014) ("a tortious act committed outside the forum state that has consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state").

The plaintiffs in Dontos argued that certain corporate defendants were subject to specific personal jurisdiction under TUFTA as subsequent transferees of fraudulently transferred assets. Id. at 340-41. The plaintiffs alleged a trail of transfers conducted for the purpose of defrauding creditors. Id. The district court dismissed the case for lack of personal jurisdiction on the basis that "[the corporate defendant] could not feasibly have participated in [the alleged] conduct, as it did not exist at the time the fraudulent transfer began." Id. at 345. But "the district court did not address the [d]efendants' alleged participation in the fraudulent transfer as a subsequent

---

[7]Plaintiffs' Response, Docket Entry No. 10, p. 7 ¶ 22.

transferee." Id. The Fifth Circuit held that the district court, by disregarding the plaintiffs' factual allegations, failed to "'accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.'" Id. (citation omitted). The Fifth Circuit also held that the plaintiffs had made a prima facie case for personal jurisdiction on the basis that "The Texas-based franchise agreements that the [corporate defendants] ultimately acquired [we]re sufficient minimum contacts to form the basis of specific personal jurisdiction." Id. at 347.

As Plaintiffs note, in Dontos "the Fifth Circuit opinion lumps the three corporat[e defendants] together."[8] The opinion does not address the issue of attributing one entity's or individual's conduct to another. Instead, the court in Dontos referred to the plaintiffs' allegations against the corporate defendants collectively throughout the opinion. And the court attributed the acquisition of the allegedly fraudulently transferred assets to the collective defendants for jurisdictional purposes.

Plaintiffs attempt to attribute the fraudulent transfer to the Trust on the basis that the Trust was formed for "the very purpose" of receiving the fraudulent transfer.[9] Plaintiffs offer this conclusory allegation as evidence that the Trust's acquisition of GSN as the transferee of TrustComm was directed at the forum.

---

[8]Plaintiffs' Response, Docket Entry No. 10, p. 7 ¶ 23.

[9]Id. at 8 ¶ 26.

Assuming, arguendo, that Plaintiffs are correct about Lemme's purpose in creating the Trust, his intentions are not attributable to the Trust or the Trustees without further evidence.

The Nox Trust was formed in January of 2012.[10] The Stock Purchase Agreement by which GSN purchased TrustComm was dated May 14, 2012.[11] At that time Lemme had no control over the Trust.[12] Without further factual allegations, Plaintiffs have provided the court with no basis for imputing Lemme's alleged purpose to the Trust or its trustees apart from a bare, conclusory allegation. Plaintiffs cite to no authority for the proposition that a grantor's intent can be imputed to an irrevocable trust administered by others after its formation. Plaintiffs offer no other factual basis for the assertion that the Trust's acquisition of GSN was for the purpose of acquiring indirect ownership of TrustComm and thus directed at the forum.

Plaintiffs have neither alleged nor shown that The Nox Trust engaged in any activity through which it can reasonably be said to have "'purposefully avail[ed] itself of the privilege of conducting

---

[10]The Nox Trust Agreement, Exhibit B to The Nox Trust's Motion to Dismiss, Docket Entry No. 4-3, p. 6.

[11]FCC Public Notice, Exhibit D to Plaintiffs' Response, Docket Entry No. 10-4, p. 3.

[12]See id. (listing Lemme as grantor and beneficiary only and stating that "[n]either the grantor nor any beneficiary of the trust will be a member of the board or of management of either GSN or TrustComm"). See also id. at 6-7 (disclosure dated May 31, 2012, explaining the management of the Trust and of GSN and the proposed management of TrustComm).

activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at 2183. Accordingly, the court concludes that Plaintiffs have failed to make a prima facie showing that The Nox Trust's minimum contacts with the forum state of Texas are sufficient for this court to exercise specific personal jurisdiction over the Trust.

## D. Jurisdictional Discovery

Plaintiffs seek jurisdictional discovery to be followed by an evidentiary hearing. Plaintiffs allege that "the exact transaction and the specific roles of the participants and contacts with Texas can only be known through discovery."[13] But Plaintiffs have failed to make a preliminary showing of jurisdiction. See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005). Nor have Plaintiffs given the court reason to believe that jurisdictional discovery is warranted. "A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction." Tornado Bus Co. v. Bus & Coach America Corp., No. 3:14-CV-3231-M, 2014 WL 7333873, at *2 (N.D. Tex. Dec. 23, 2014) (citations omitted). Plaintiffs have not specified what facts they hope to obtain in jurisdictional discovery that would support the court's exercise of

---

[13]Plaintiffs' Response, Docket Entry No. 10, p. 4 ¶ 12.

personal jurisdiction over the Trust. For that reason, Plaintiffs' Motion to Amend and for Jurisdictional Discovery (Docket Entry No. 10) is **DENIED**.

### III. Conclusions and Order

For the reasons stated above, the court concludes that Plaintiffs have failed to make a prima facie showing of minimum contacts necessary to support the exercise of general or specific personal jurisdiction over the defendants. The court therefore concludes that Plaintiffs' claims against The Nox Trust should be and are hereby **DISMISSED without prejudice** for lack of jurisdiction. As a result, The Nox Trust's remaining grounds for dismissal are moot. Accordingly, The Nox Trust's Motion to Dismiss (Docket Entry No. 4) is **GRANTED in PART and MOOT in PART**.

**SIGNED** at Houston, Texas, on this 17th day of November, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE