United States District Court
Southern District of Texas
**ENTERED**
December 14, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| 99869 CANADA, INC., 3791068 CANADA, INC.; DAVID BURTNIK; GEORGE DeWOLF; DRACO CAPITAL, INC.; ECAL PARTNERS, LTD.; EOSPHOROS ASSET MANAGEMENT, INC.; MARY HANEMAAYER; DARSHAN KHURANA; ROBERT MENDEL (Individually and As Assignee of STANLEY BERAZNIK, EDWARD PASCAL); MATTEO NOVELLI; DIYA AL-SARRAJ; SEQUOIA AGGRESSIVE GROWTH FUND, LTD. (Individually, As Successor to SEQUOIA DIVERSIFIED GROWTH FUND, LTD. and As Assignee of RIG III FUND, LTD.; SEMPER GESTION, SA; ARAN ASSET MANAGEMENT; ACHIM GLAUNER; KARL-HEINZ GLAUNER; and CHRISTIAN GLAUNER); ASHWIN SAIRAM; PETER TAYLOR; and MARLENE TERSIGNI, § § § § § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, § § | |
| v. § § | CIVIL ACTION NO. H-16-2788 |
| GLOBAL SECURITY NETWORKS, INC. and REINER MARIO LEMME, § § § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court are defendant Global Secure Networks, Inc.'s ("GSN") Motion to Dismiss (Docket Entry No. 11) and Plaintiffs' Response to [GSN]'s Motion to Dismiss and Motions for Leave to Amend (Docket Entry No. 13). For the reasons stated below, GSN's Motion to Dismiss will be denied, and Plaintiffs will

be granted leave to amend their Original Petition & Request for Disclosures (Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 3-13).

## I. Factual and Procedural Background

Plaintiffs allege that they provided funds to Robert Kubbernus to acquire the controlling interest in SkyPort Global Communications, Inc. ("SkyPort"), which was later renamed TrustComm, Inc. ("TrustComm"). Plaintiffs allege that, despite assurances that they would receive an interest in SkyPort, Kubbernus acquired the company on behalf of Balaton Group, Inc. ("Balaton") an entity that he owned exclusively. On July 23, 2015, Plaintiffs secured a $16.8 million judgment against Kubbernus and Balaton upon findings of fraud and violations of the Texas Securities Act.

Plaintiffs allege that in December of 2011 while Plaintiffs' suit against Kubbernus was pending, Kubbernus entered into an agreement with defendant Lemme for Lemme to acquire TrustComm through a newly created entity, GSN. In 2013 TrustComm became a wholly-owned subsidiary of GSN.

Plaintiffs bring this action against Defendants GSN and Reiner Mario Lemme asserting claims for fraudulent transfer in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Texas Business and Commerce Code §§ 24.005(a)(1) and 24.005(a)(2).

GSN moves to dismiss Plaintiffs' claims against it for failure to state a claim for which relief may be granted and failure to plead fraud with particularity.

## II. Analysis

### A. Standard of Review

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the well-pleaded factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1955).

However, a party seeking to avoid dismissal "must plead specific facts, not mere conclusory allegations." Guidry v. Bank

-3-

of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992). Furthermore, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (2d ed. 1990)).

When considering a motion to dismiss courts consider the complaint and its proper attachments. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Courts may also rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id.

B.  **Motion to Dismiss**

1.  Failure to State a Claim

A transfer is fraudulent under TUFTA as to present and future creditors "if [a] debtor made the transfer or incurred the obligation" (1) with "actual intent to hinder, delay, or defraud any creditor of the debtor" or (2) "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and

-4-

the debtor" . . . "believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  Tex. Bus. & Com. Code Ann. § 24.005(a). Plaintiffs allege that the transfer and sale "by Kubbernus of his shares in TrustComm to Lemme through [GSN] . . . constitutes a fraudulent transfer under [TUFTA]."[1]  Plaintiffs allege that the transfer was made "(a) with actual intent to hinder, delay and defraud his creditors, including Plaintiffs and (b) without receiving a reasonably equivalent value in exchange for the transfer, while he, Kubbernus, believed or reasonably should have believed that he would incur, debts beyond [his] ability to pay as they became due."[2]

Plaintiffs' somewhat conclusory allegations are supported by facts alleged elsewhere in Plaintiffs' Petition and in documents attached to GSN's Motion to Dismiss and reply in support.[3] Plaintiffs allege that Kubbernus transferred his controlling interest in TrustComm, which he owned indirectly, after Plaintiffs initiated the lawsuit that eventually led to a judgment against

---

[1] Original Petition & Request for Disclosures ("Plaintiffs' Petition"), Exhibit A to GSN's Motion to Dismiss, Docket Entry No. 11-1, p. 8 ¶ 23.

[2] Id.

[3] See generally Plaintiffs' Petition, Exhibit A to GSN's Motion to Dismiss, Docket Entry No. 11-1; Plaintiffs' Original Petition, Request for Disclosure, and Request for Production of Documents, Exhibit F to Reply in Support of [GSN's] Motion to Dismiss and Opposition to Plaintiffs' Motion for Leave to Amend ("GSN's Reply"), Docket Entry No. 15-6.

Kubbernus and Balaton. Plaintiffs allege that it was Kubbernus who "sold his controlling interest in TrustComm (minus these two subsidiaries) to Lemme, through a newly created entity named [GSN]."[4]

GSN moves to dismiss on the grounds that GSN acquired TrustComm not from Kubbernus or Balaton but from Bankton Financial ("Bankton") and TII Holdings ("TII"). Because those entities were not named in the judgment against Kubbernus and Balaton, GSN argues that Bankton and TII are not "debtors" under TUFTA and that the transfer was therefore not fraudulent.

Plaintiffs respond with two theories under which the transfer to GSN could have been fraudulent.[5] First, Plaintiffs note that TUFTA defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." Tex. Bus. & Com. Code § 24.002(12). If, as Plaintiffs allege, Kubbernus was involved with the transfer of TrustComm stock from Bankton and TII to GSN, the transaction could constitute indirect disposal of an asset. Second, Plaintiffs state their intent to allege that Bankton and TII were merely alter egos of Kubbernus for the purposes of the transfer to GSN.

---

[4]Plaintiffs' Petition, Exhibit A to GSN's Motion to Dismiss, Docket Entry No. 11-1, p. 7 ¶ 16.

[5]Plaintiffs' Response to [GSN's] Motion to Dismiss and Motions for Leave to Amend ("Plaintiffs' Response"), Docket Entry No. 13, pp. 3-4 ¶ 8 and pp. 5-6 ¶ 15.

To the extent that Plaintiffs' allegations support the reasonable inference that Kubbernus was acting through Bankton and TII, the court cannot agree that Plaintiffs have failed to state a legally cognizable claim.

2. Statute of Repose

GSN argues that the only potentially fraudulent transfer, i.e., one in which Kubbernus or Balaton was a transferor, occurred more than four years before the present action commenced. GSN relies on the Stock Purchase Agreement dated May 14, 2012, to show that Bankton and TII were TrustComm's sole stockholders. If the transfers from Kubbernus and Balaton to Bankton and TII were the only alleged fraudulent transfers, the statute of repose might bar any attempt to void the transfer to GSN as a "subsequent transfer." But Plaintiffs allege that the transfer of TrustComm's stock to GSN, which occurred sometime after May 14, 2012, was a transfer "by Kubbernus."[6] Plaintiffs argue that Kubbernus was acting at least indirectly through these "shell entities."[7] Plaintiffs further argue, and GSN does not rebut, that the repose period has not run on the transfer from Bankton and TII to GSN.[8] The court therefore cannot conclude that the statute of repose extinguishes Plaintiffs' claims.

---

[6]Plaintiffs' Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 9 ¶ 23.

[7]Plaintiffs' Response, Docket Entry No. 13, p. 1 ¶ 1.

[8]Id. at 6-7 ¶ 17.

3. Res Judicata

GSN argues that Plaintiffs are barred from asserting that Bankton and TII were merely alter egos of Kubbernus by the principle of res judicata. GSN asserts that Plaintiffs "willingly abandoned Bankton as a defendant and failed to secure an alter ego finding against Bankton."[9] If correct, GSN's res judicata argument could invalidate Plaintiffs' claim and render amendment futile.

"A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." E. D. Systems Corp. v. Southwestern Bell Tel. Co., 674 F.2d 453, 457 (5th Cir. 1982); see also Norris v. Hearst Trust, 500 F.3d 454, 460-61 (5th Cir. 2007) ("[T]he preclusive effect of prior state court proceedings on federal proceedings is determined by the treatment those state court proceedings would receive in the courts of the state—here, Texas—in which those prior proceedings were held."); Rollins v. Dwyer, 666 F.2d 141, 144 (5th Cir. 1982) ("A state court judgment commands the same res judicata effect from the federal court as it would have in the court that rendered it, without regard to whether the state court applied state or federal law."). The court must therefore look to Texas law to determine the preclusive effect of Plaintiffs' prior lawsuit.

In Texas "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same

---

[9] GSN's Motion to Dismiss, Docket Entry No. 11, p. 18.

subject matter and that could have been litigated in the prior action." Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996) (citing Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992)). Res judicata is an affirmative defense. Fed R. Civ. P. 8(c); see also Tex. R. Civ. P. 94; Zurita v. Lombana, 322 S.W.3d 463, 474 (Tex. App. -- Houston [14th Dist.] 2010, pet. denied); Serrano v. First Prestons Mgmt. Corp., 346 S.W.3d 648, 650 (Tex. App. -- El Paso 2009, no pet.). The party claiming the defense must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of [the] parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." Citizens Ins. Co. of America v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007) (citing Amstadt, 919 S.W.2d at 652).

"Under the transactional approach followed in Texas, a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit." Id. (citing Barr, 837 S.W.2d at 631). "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation." Barr, 837 S.W.2d at 630. "It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." Id. This determination should be made "pragmatically, 'giving weight to such considerations as whether the facts are related in

time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" Daccach, 217 S.W.3d at 449 (quoting Barr, 837 S.W.2d at 631). "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." Barr, 837 S.W.2d at 630.

Texas courts have held that "[a] claim for fraudulent transfer is a separate cause of action from fraud." Walker v. Anderson, 232 S.W.3d 899, 913 (Tex. App. - Dallas 2007, no pet.) (citing Nobles v. Marcus, 533 S.W.2d 923, 925 (Tex. 1976); Mikulich v. Perez, 915 S.W.2d 88, 94 (Tex. App. - Amarillo 1996, no writ) (Rickhoff, J., concurring). Moreover, Texas courts have distinguished a claim in which a party seeks to enforce a judgment from a collateral attack that would be barred by the doctrine of res judicata. See Matthews Construction Co., Inc. v. Rosen, 796 S.W.2d 692, 694 (Tex. 1990).

GSN argues that "the issue is not whether the fraudulent transfer claim against GSN is itself barred by res judicata, but whether a necessary legal theory upon which that claim relies is barred by res judicata."[10] But GSN does not show that the alter-ego issue was adjudicated in the state court litigation. Nor does GSN explain why Plaintiffs should have asserted this theory in the prior suit. The theory that Bankton and TII are alter egos of

---

[10]GSN's Reply, Docket Entry No. 15, p. 8.

Kubbernus is, as GSN points out, a theory of liability. But it is not one Plaintiffs were required to assert in the prior suit. If Plaintiffs obtained a judgment against Kubbernus directly, piercing the corporate veil of his alter egos would be superfluous, at least as to the fraud claim.

At least one court has considered and rejected a similar argument. JNS Aviation, Inc. v. Nick Corp., 418 B.R. 898, 910-11 (N.D. Tex. 2009), aff'd sub nom. In re JNS Aviation, L.L.C., 395 F. App'x 127 (5th Cir. 2010). District Judge Robinson explained why GSN's reasoning would create an unjust result:

> Assume a situation where a plaintiff sues a corporate defendant for breach of contract. The corporate defendant allows the plaintiff to obtain a default judgment against the corporation, but transfers the assets of the corporation to a separate entity, effectively preventing the plaintiff from collecting the judgment because the corporation is now bankrupt. The plaintiff, at the time of suit, had no cause to bring a veil-piercing claim and prior to obtaining the default judgment, had no awareness of the fraudulent transfer. <u>To hold that the plaintiff could not bring a second suit asserting veil-piercing claims to collect their judgment would protect individuals who fraudulently transfer assets from a corporation to avoid judgments against them</u>. It would also create a catch-22 for plaintiffs in situations such as the one above. A plaintiff would be barred from bringing the second suit because the veil-piercing claim was not asserted in the first suit; however, the plaintiff could not bring the veil-piercing claim in the first suit because at that time, there was no cause to bring the claim. This would be an unjust result.

Id. (emphasis added). Applying the court's reasoning to the present case, the "breach of contract" is analogous to Kubbernus' initial fraudulent conduct. The alleged use of Bankton and TII to transfer TrustComm stock that Kubbernus owned indirectly was a

distinct action taken to avoid judgment. Because Kubbernus' fraud was attributed to him directly in the prior suit, it is not obvious why Plaintiffs would have needed to assert veil-piercing claims. To prevent them from doing so now in an attempt to recover a valid judgment would be an unjust result.

Moreover, the claim that Kubbernus transferred TrustComm from Bankton and TII to GSN to avoid enforcement as opposed to merely continuing his original fraud suggests a distinct transaction, one separated in time, origin, and motivation from the original fraud. The subject matter of the fraudulent transfer claim is therefore distinct from the underlying fraud.

Finally, because TII was not a party to the prior litigation, res judicata does not bar Plaintiffs from asserting that TII was an alter ego of Kubbernus for the purposes of the transfer to GSN.

4. Rule 9(b)

GSN argues in its Motion to Dismiss that Plaintiffs' claim should be dismissed for failure to plead fraud with particularity. Plaintiffs counter that their state-court Petition was not originally subject to heightened federal pleading standards, and GSN appears to abandon this point in its Reply. Moreover, even in the case of dismissal for failure to meet heightened pleading requirements, Plaintiffs should be given leave to amend unless doing so would be futile. Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000). Because Plaintiffs will be granted leave to amend, the issue is moot.

C.  Motion for Leave to Amend

Plaintiffs seek leave to amend their original Petition. Leave to amend pleadings is not automatic but "shall be freely given when justice so requires." Avatar Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314, 320 (5th Cir. 1991) (citing Fed. R. Civ. P. 15(a)). The decision to grant or deny a motion to amend is within the sound discretion of the trial court. Id. The court considers such factors as "'undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (and) futility of amendment.'" Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir. 1981) (citing Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

Plaintiffs filed this action in state court and have not since had an opportunity to amend their pleadings. To the extent that amendment may cure any defects in Plaintiffs' state-court Petition, justice requires that Plaintiffs be given that opportunity. The court, having considered the parties' arguments, concludes that amendment would not be futile and that allowing Plaintiffs a chance to bring their pleadings in line with federal pleading standards will not unduly prejudice GSN or any other defendants.

III. Conclusions and Order

For the reasons stated above, GSN's Motion to Dismiss (Docket Entry No. 11) is **DENIED**. Plaintiffs' Motion for Leave to Amend

(Docket Entry No. 13) is **GRANTED**. Plaintiffs' amended complaint will be filed by January 13, 2017. GSN's request for attorney's fees and costs is **DENIED** because GSN has failed to justify or even quantify such an award. The initial pretrial and scheduling conference will be held on January 27, 2017, at 3:00 p.m. No additional dispositive motions will be filed before the conference.

**SIGNED** at Houston, Texas, on this 14th day of December, 2016.

                                              _____
                                                           SIM LAKE
                                              UNITED STATES DISTRICT JUDGE